Page number 09-2726, Paul Brandt et al. v. Allstate Insurance. Gentlemen, good morning. Do you want to step up and identify yourselves for the record? Good morning. James Okasik for the opponent. Peter Forst, I believe. James, Peter, okay. Fifteen minutes each. You can save out any portion you wish for a response. I think you can safely assume that we've read your briefs. Thank you, Mr. Chairman. Good morning, ladies and gentlemen. This is an insurance case. There's an important aspect here that I think that the court should keep in mind when it's making its deliberations and analyzing this case. Underinsured motorist coverage is the subject of several public policy-type decisions from the Supreme Court and follows pretty much hand-in-hand with uninsured motorist coverage. And so I think that comparisons are inevitable, and I also think they're very fair. Is there any case since Cummins that supports your view? I would say that there are cases which apply it similarly, but I don't think there is a case where all of the facts support either side. Assuming that you're right, why even have an occurrence limit in any case? Well, an occurrence limit is a cap on the total liability an insurer has to pay in any situation. And it occurs not only as a per-occurrence limit. When would it be triggered, though, if you always suggest that we first look to the per-person limit? Well, there can't be. Would it ever apply? Sure. I mean, you can. I mean, inadvertently it might. But why do you need it if, as you argue, we first look to the per-person limit? Because when there is either more than one claim or, for example, aggregate limits for the total number of claims, not necessarily the same accident, but over the course of a year. Okay. Policies have aggregate limits for the year, a million, five million for a year, whatever. When you address a claim, you are addressing a claim, an individual's claim. Uh-huh. And when you have a per-person limit, that is purely a creature of artificiality in the contract. Let's talk like lawyers. Sure. A creature of artificiality? Well, the person who is injured does not decide. He's not part of the contract and doesn't decide, this is how much I should get. But you're not suggesting in this case to forget about the per-occurrence limit, are you? No, no. The per-occurrence limit is, you know, the insurance company contracts $500,000. No matter what happens, the most we're going to pay is $500,000. Okay. I'm having a little trouble with your math, okay? So why don't you explain to me and the other panel members if they are so interested. You've got $100,000 that went to Paul Brand, approximately, $99,000, okay. And then Janet Brand received $50,000 for her injuries. But then there was a Family Expense Act claim. Is that going into the equation or not? It's not clear from your brief. It's, I'm, I think it does not go into the equation. Well, it's not really discussed sufficiently. Why don't you split it up the way you want? Well, then, okay, so let's put that to the side for a moment. And then you have $150,000 for the child. So what is your total that you're going to offset against the $500,000 total?  Yes, all right. So $150,000 for Paul. Yes. $200,000 for Janet. And $100,000 for Michelle. That's what's left after the offset. Yes, so what are we up to now in total? Under $500,000? Yes. Okay. Now, if we included the $100,000 under the Family Expense Act. If you throw that in, it's still under $500,000. Yeah, what is it? Okay. Well, you know, I'm insisting. $150,000, $350,000, and it would be $450,000. Okay, so either way, you're not suggesting to us that the per-accident, per-occurrence, rather, language doesn't come to play. No, and I specifically set that out, that the claim by Ball State that we wanted $750,000 is totally bogus. Okay, well, then how much more than what they gave you do you want? The difference between what they got and $250,000 per person. Per person. Per person. Because if it were a liability case, each person would be entitled to that much money. Okay, and how much does that add up to? That adds up to $450,000. Less than the $500,000 limit for occurrence. Less than the $500,000 limit. And that's what you're seeking. There's no way that Ball State would ever have to pay more than they contracted. No way. Just a minute. Sure. Just a minute. How much money did you get from the underinsured motorist's policy? Essentially, $300,000 of the $600,000. $399,000? $399,000. Okay. If you count the other out. Okay. Let me ask you a question that has me confused. When you say that there's $100,000 under the Family Expense Act, is that a separate release that you executed? Or is that part of the same release that Janet made to the tort piece? It was a separate payment, a separate release. It is. It was separate. Okay. And I'm not, you know, when you talk about that, you say to bodily injury to any one person. That's why I don't think it applies to Janet's. I know. Okay. If there's a separate release, you know, you have an argument. There's no way, not claiming, not happening, that Allstate would ever have to pay more than $500,000. We're not suggesting they should. We're not suggesting that you throw out the per-occurrence limit. You just told us to count the $399,000 you got from the underinsured policy. Count each individual's against the individual's. Not aggregate. Because what if... No, I understand the position. No, I know you do. Perfect. But my point is, if only one person made an underinsured motorist claim in this case, let's say Paul and Janet was tired of the legal system and Michelle was the only one who made the claim. Would it be fair to offset for them and not let them make claims because of other claims that were made by other people? I mean, I think that's the whole point of comments. Well, if you take one person and forget about the other two and they settled for $100,000 under the other policy, your position is basically that if their injuries are more and they equal $250,000, under their underinsured motorist policy, that's what they paid for. The premium was for them to be fully compensated under their policy to the amount of $250,000. Up to $250,000 for each person as long as the company doesn't pay out more than $500,000. They run out of money. It's not that their damages aren't more or that there's a loss. It's that the money's gone and when it's multiple people, people got to cooperate. Allstate has not paid anything. Well, Allstate did pay $85,000. $85,000. Not under the medical? Not under the medical. They offset the $15,000. You know, we just got a letter with a check that said, you know, this is what we figured. Well, no, but they computed it according to the cases post-Cummins. And I might add, a literal reading of the statute. Well. Now, you can argue that there's a public policy implication in the statute and you're perfectly free to do that, but it would help if you had a case post-Cummins that agreed with you. Well, I don't think there's really, I think what happened is, I think Thurman, you know, and even Triana, I think, you know, they've gone off into left field. Well, and not only them. I did a little research of my own and in addition to that, we've got a case, well, you know the cases as well as I do. I'm trying to find a case that agrees with your analysis post-Cummins, which takes into consideration the statute. You have an argument in your brief. Incidentally, Cummins, you know, was the plurality opinion. I'm not even sure that it's, you know, what's it citable for. But let's assume, let's assume that it's citable for what it says and what it does, okay? Okay. We'll give you that, even though it's a plurality opinion. At the time that Cummins was decided, the amendment, as you point out, was already in effect. It didn't apply to the Cummins case because that had occurred back in, I don't know, five or six years earlier, where the amendment wasn't in effect. So you can't really fault the Cummins Supreme Court for ignoring the amendment because the amendment wasn't applicable to the facts of the case they had before them. Right. But as I understand your analysis, you're suggesting that they were aware of the amendment at the time that they wrote the Cummins opinion, and that somehow, mysteriously, the Supreme Court's opinion trumps the amendment. Is that a fair reading of your argument? I think my argument is more along the lines of the amendment does not affect the part of the statute the Supreme Court interpreted. Okay. And so... So that whenever you have multiple parties, it wouldn't trigger the amendment? I don't think the statute itself triggers, you know, has anything to do, because there's no language in the statute about per person per accident. The amendment says the insurance company does not have to pay more than its limits, or the difference between the limits, okay? What Cummins says... And what is that all about, between its maximum, in this case, $500,000? Its maximum and... And what you got. Right. Well, that's what they gave you. But... What you're ignoring is the $300,000 that they received from the underinsured motorists' policy. And then going back to, well, we didn't get as much as we should have gotten under our per person. No, no, no. Not... Yes, sure it is. I'm not saying you're playing a shell game, okay? But I don't mean to... That's not the intent. The intent is... You said look at the per person limits first. You must look at the per person to determine what each individual is entitled to. I really do understand your position. Almost positive I understand it. Let me ask you another question. One of the policy considerations you have to rely on, it seems to me, even with Cummins as a background for your policy argument, is that you pay, quote, in premium for that per person maximum coverage per person. How do you know that? If the statute is interpreted as only applying, you know, applying the maximum per occurrence first, all right, and the cases since Cummins all interpret the statute in that way and even suggest that Cummins is no longer even applicable when you take into consideration the amendment to the statute, isn't it reasonable to expect that these insurance companies are going to base their premiums on their total exposure rather than on the exposure you suggest they should have? Is that a fair question, first of all? It's a fair question. I'll address it. If they base their premium on their total exposure, then here their premium is based on a total exposure of $500,000. If you go through and apply the individual limits first to determine what each person is entitled to, in other words, what is the difference, because those cases that have interpreted as saying, oh, it applies per occurrence, there's no basis for that in the statute. And the cases that go that way. Which is every case since Cummins that I can find. There's no case since Cummins that I know of. And since the amendment to the statute. Since the amendment to the statute. And even before that, if you read Heiple's dissent in Cummins, pretty nasty dissent, wasn't it? It is a nasty dissent and Thurman's is a nasty case as well. But, you know, they disagreed with that. I don't think Thurman was nasty. Well, I. I mean, you really trashed Justice Welch. He's a pretty good judge. And I don't doubt that he is. I just, I do not believe that that was a fair and well. He had some pretty good wingmen in the case too. You know, I think that. They can't defend themselves now. No, I just, you know, sometimes you read a case and you say. Boy, this doesn't help me at all. This doesn't help me at all. But this is so off base. This is so. You wanted to do this to get this resolved. So you twisted all this up. So your public policy argument is basically in situations like this you first should look to the per person limits. Because that's what I as the policy purchaser really focused on. I didn't focus on the total occurrence. I focused on the per person. You say that someplace in your brief too. Certainly people do. Well, yeah, but you still have to read the policy, don't you? That's very true. The fact that you might have thought or you might have had an expectation based on insurance language that you were going to get more than the policy really provided is not unusual. Incidentally, why didn't anybody, there was no appeal, of course, from PLA, I mean. Well, Thurman had no plaintiff. Yeah. I mean, the plaintiff didn't participate. So there was no PLA. So the case just got decided and there it is. And it got decided without any dissent. I mean, there was nobody there arguing. Now, I don't know if that would have made a difference, you know, under the circumstances. But certainly it was not a well-argued, hashed-out case. Okay. And if, you know, when you talk about what a person expects or what anyone expects, again, and I mentioned it, I kind of hammered this in the brief, cases are handled on an individual basis. Yeah. Not on a group basis. And so when you go to do something with an insurance claim, you're not dealing with aggregates. And I pointed out some absurdities that it can be pushed to if you take this logic and say, as I said, say you have $15,000 per person, $1 million per accident. You know, is it, as a liability holder, and I have a $300,000 underinsured motorist. What about mercury indemnity? What did you think of that case? That's the case that Justice Joseph Gordon wrote, where he pointed out that Cummins was a plurality decision, A, and B, was superseded by the amendment to the statute. I don't believe that the amendment to the statute superseded because. Well, we'll never know, will we? Because Cummins didn't have to address the amendment because it applied, it was taking a fact situation that was pre-amendment. But look at what the amendment says. I do. This is why I say, when it's criticized as saying, oh, the amendment moots Cummins, the amendment was a rebuke by the legislature for Cummins, whatever you want to call it. The amendment itself says merely you can't make the insurance company pay more than the difference. It doesn't say per person. It doesn't say per occurrence. I understand. And so what Cummins interpreted was the prior ones where it said, when you determine what are those limits, you must look at what was recovered, what is recoverable limits. This is why when you have a $100,000 policy and a guy plows into a baseball field and hits nine kids and injures them, and he's only got $100,000, why they can then go to their own insurance companies and say, well, we each got $10,200. You know, we want to get the difference now. Whether you've got a 25-50 policy, you know, a 15-30, whatever it is, you've got some room in there because effectively your limits were what you got. Okay. You know, I asked your second argument where you feel that Allstate did not reduce the limits of the UIM coverage based on the amount paid under the medical payment policy. I mean, their policy says they can't, doesn't it? Their policy says they can in uninsured motorist law ever since Melson. This is underinsured. Right. But in uninsured, since Melson, and through Hogan, when a person's damages, either undisputed or proven, exceed the combined limits of the uninsured and the medical pay, there's no settlement. That was Melson, originally an uninsured motorist. But then you run up against Heifel again in the golfs, don't you? He's really a nemesis for you. Heifel, I think you're right. There you are. You know, and there's that Heifel standing there. Heifel's in, and Justice Heifel has been there for so many years. Well, he's not there anymore. I know. But he was there in some very crucial decisions dissenting. And not, I mean, you know, he's not an unintelligent guy. We know that. But, you know, I have a different point of view than he does. And the idea is you prevent double recovery. And Hoagland and cases after that push that into underinsured as well. And I think that should be the case because it works, it's easy, it's simple, and it's predictable. We should give All-Star to Heifel. I mean, can an insurance company write what they want in a policy? They have to get it approved by the Department of Insurance, don't they? Well, that's not, that doesn't mean it's legal. The Department of Insurance is just, they have their rules and regulations about how things are to be done. You know, there are plenty of policies where the courts have ruled that the language is either incompatible with public policy or it's conflicting, you know. Well, there was first underinsured motorist coverage. They even had public hearings where the trial buyer presented their arguments, the defense buyer presented their arguments. The Department of Insurance set up rules and regulations. And most policies have the same provision in there where you, they get credit for the medical pain. So everybody's policy then is void against public policy. Not the policy, the language. It's the application in certain situations. I mean, it says they could do it, so it would have to be the words that are. Well, again, when you look, when they looked at what is behind those rules and regulations, Nelson and Hoakland both said it's to prevent double recovery. And when you're not preventing double recovery, you are not achieving the goals of public policy. All you're doing is penalizing the plaintiff. And the plaintiff pays for both of those coverages. And in certain circumstances, the reason for that clause, preventing double recovery, is effective. But in others, it's not. And if a person ends up, you know, in a slightly better position, he paid for that coverage. You know, if you, you know, in certain situations, you pay for medical payments coverage. If the accident's your fault, all states doesn't get their money back, you know. Well, and uninsured motorists, underinsured motorists, and medical pay provisions, these are provisions that are placed in the policy. The insurance company doesn't necessarily like that, do they? They don't get much money for premiums for that kind of stuff. I think they do okay. Well, if you ever look at it. We should hear from them, too. Yes, that's probably. We'll give you an opportunity to respond once we've heard from, is it? Mr. Morris. Mr. Morris. I wasn't sure whether you were Mr. Morris or Mr. James. I'm sorry, Peter. Your turn. Peter is your first name. Yes, Peter. I didn't want people to think that you and I were on a first name basis. We don't know each other. Do we know each other? No, I've never met you before. Okay. Just so your opponent doesn't get the wrong idea. No, that happens sometimes. Trial judges, I used to do it occasionally. And I'd make the mistake of referring to an attorney by his first name. And the other side, oh, my gosh. What am I up against? I've had it with our frat buddies. Just so we're clear, we don't know each other. Go ahead. Well, thank you for all your comments. The insurance policy, the premium is determined by the terms of the contract and all the provisions in there, the per occurrence limit, the per person limit, and the limitations, the reductions.  based on Cummins and the spirit of Cummins, to take each case on its merits. And when we have a case such as this, to look at the individual situation and decide whether we apply the per person limits first before we apply the. I think that per person first, per occurrence first argument is really a red herring because it's ignoring the really true provision, which is the limit of liability section of the policy, which says that the limits are reduced by all amounts paid, all sums, plural, paid by the tortfeasor. And here we have a $500,000 policy. They received $400,000 from the tortfeasor. The brands did. So you take that per occurrence for all three of the brands, $500,000 minus $100,000. And on its face, the amendment to the statute would appear to support your position. At least that's how the cases that have looked at it since have interpreted it generally. That's a softball to you. Yeah, but I don't think we're getting quite the real issue in Cummins, which is whether this is underinsured in the first place. We chose not to fight that. We have the Thurman case after Cummins, which says Cummins doesn't apply anymore. But instead of arguing that, we said, fine, we'll just not fight that issue, offer the full $100,000. Well, we have another case that says it doesn't apply either. That's the Mercury case. Mercury, yeah. But we could have fought that battle. Cummins is a very good opponent. We chose not to do that in this case, just to concede that for this case it's an underinsured motorist case, but we're not going to concede our setoffs. And we certainly have a very clear provision which says the limits, plural, are reduced by the sums, plural, received by the tortfeasor. They got $400,000. That leaves $100,000. And then we previously paid $15,000 in med pay, which is why the $100,000 was reduced by the $15,000 to $85,000. And you base your argument on your setoffs on adults. Mr. Morse, what about the suggestion regarding the family expenses, that this is somehow separate and apart? Well, what is your response? It's clearly not appropriate. You can't take your money and say, well, we're not going to pay you the money, we're going to pay your mother the money, and therefore it doesn't count for you. We don't really care how they move the money around. They got $400,000 from the tortfeasor. They could have given $200,000 to Mr., $200,000 to Mrs., and $0 to the daughter, and been here saying, I want $250,000 for the daughter. We don't care how they maneuver that, because the family got $400,000. We have a $500,000 limit for all the people insured under that policy in that accident. $500,000 minus $400,000 is $100,000 minus the MedPay. We paid it. Anything else you want to tell us? Well, just, you know, I mean, obviously, Your Honors are aware that you, on the MedPay setoff issue, you affirmed the Dalston case two weeks ago. Obviously, I believe it's a very properly written opinion. It should be affirmed and not overturned two weeks later. Same for Erie v. Triana. On the other issue, this Court fully analyzed this whole issue as to whether you look to the per-occurrence limits or the per-person limits when you have multiple insurers who are making claims. You correctly ruled. You followed the older Oberlin case from 1992, and in February, you reaffirmed that rule and said you'd definitely look at the per-occurrence limits when you have multiple insured persons to decide what the insurance company's exposure is. So we just ask you to reaffirm both of those and affirm the summary judgment that was granted to Dalston in this case. Any questions? Any more questions? Thank you, Your Honors. You have the heavy ore. You get the final word. I do have the heavy ore. And, you know, pick. We're not going out to lunch later? No. Nothing. Anywhere. We have to write an opinion. Yes. If we agree with you. Yes. How are we going to distinguish the cases that are out there? Especially the First District cases. Yeah. How would you distinguish Triana? Triana I distinguish by its reliance on open land and its really stacking case. Triana doesn't – I think it's decided wrong, but I don't think it's precedential here because it's doing the same thing just different. It's taking a policy – one policy, single limit, two guys recovered $100,000 each, $300,000 policy. Okay? It's a single limit policy. There's no difference, as I say in the brief, there's no difference between a 300-300 split limit policy. I think the quick answer to that, and it's been made in a couple of the cases, is that we can't draft statutory language that accounts for all of the vagaries that could occur. This is true. Okay? When you apply the limits in particular fact situations. For example, in Cummins, I think one of the things that really bothered them, there were a whole flock of people in that one car, weren't there? Yes. In the underinsured's car. I don't know how many there were, three, four, something like that. At least two children. Yeah, exactly. And I think what the Supreme Court struggled with is that here we have a statutory scheme for underinsured motorists, and yet we've got this particular horrific accident with more people than anybody ever anticipated would have to be covered by the various policies. So in order to make up for the shortfall, and that's how you characterize it, shortfall, when you have multiple injured people, we have to really inject the public policy argument into our underinsured motorist coverage. There is a public policy argument. I understand that. Because it's to fill the gap part. It's not just the same position. Right. I know. But since Cummins, you haven't had anything that really buys into that. Well, except that the fact situations that have arisen have not been horrific. Yes. Similar to Cummins. Okay. So what you have to do is you have to come up with a reasonable, rational approach that's going to be effective across most vagaries without penalizing either the insured or the insurance company. Okay. And that's what happens here. If you follow my line, the insurance company never pays more than its limits. Its per occurrence limit is there, and they never have to pay more, and that's what the amendment to the statute emphasizes. However, if they had, say, eight people that were covered. They had eight people that were covered. At $250,000 each. The most they pay is $500,000. Yeah. Now, each one has a shot at that $250,000. Right. And maybe the insurance company. Without regard to how much is recovered from the underinsured. That's the insurance company's decision to make and arbitration. And just like with a bodily injury policy. Okay. If you've got $250,000, $500,000, six people injured, and the first two people tried a verdict and get maximum verdicts, there's no coverage left. The money's gone. The insurance isn't there. Fine, you can try and collect it from the court fees. But once the per occurrence limit is paid. I understand. It's gone. But each person should have a right to shoot for the purpose. But it could very well be, given that amendment to the statute, that your real quarrel is with the General Assembly and the insurance code rather than with the decisions of this court and other appellate courts. I would say that the best answer to that question is that then we would be trying to legislate all the little vagaries, and I think the statute has it worded and interpreted properly. Now that Heifel's gone, you might have a better shot at that argument. I would hope that that's going to be Mr. Morrison's problem. With all respect for Justice Heifel. Yes. No, I understand that. He had a very different point of view from mine and argued it well. So I thank the court very much for their time. We thank you. The briefs were very well done. We appreciate your input. We'll take the case under advisement.